Filed 7/12/23  In re Mason C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MASON C. et al., Persons Coming Under the Juvenile Court Law. | B318507 |
| | (Los Angeles County Super. Ct. No. 21CCJP03450A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DARLENE C., Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Martha Matthews and Nancy Ramirez, Judges. Dismissed as moot.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Tracey Dodds, Principal Deputy Counsel, for Plaintiff and Respondent.

_____

The juvenile court in February 2022 declared then-10-year-old Mason C., two-year-old Mariah A. and seven-month-old Marisol G. dependent children of the court after sustaining allegations pursuant to Welfare and Institutions Code former section 300, subdivision (b)(1),[1] that Marisol had a positive

_____

[1] Senate Bill No. 1085 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 832, § 1), effective January 1, 2023, amended Welfare and Institutions Code section 300, in part, by rewriting subdivision (b)(1), to now provide in separate subparagraphs that a child comes within the jurisdiction of the juvenile court if "(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of any of the following: [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child. [¶] (B) The willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left. [¶] (C) The willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment. [¶] (D) The inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

New section 300, subdivision (b)(2), provides, "(2) A child shall not be found to be a person described by this subdivision solely due to any of the following: [¶] (A) Homelessness or the

toxicology screen for amphetamine at birth; the children's mother, Darlene C., was a recent user of amphetamine, which interfered with her ability to provide the children with appropriate care and supervision; Darlene's male companion Marco G. (Mariah and Marisol's presumed father) had a history of illicit drug use that endangered the children's safety; and Darlene, knowing of Marco's serious drug problem, failed to protect the children by allowing Marco to reside in the children's home and to have unlimited access to the children. The children remained released to Darlene under the supervision of the Los Angeles County Department of Children and Family Services.

Darlene appealed, challenging only the jurisdiction findings concerning the danger to the children from her use of amphetamine shortly before Marisol was born. While her appeal was pending, the court terminated dependency jurisdiction with juvenile court custody orders granting Darlene joint physical and legal custody of Mason (with his nonoffending presumed father, Rafael C.) and sole physical custody of Mariah and Marisol. We dismiss Darlene's appeal as moot.

---

lack of an emergency shelter for the family. [¶] (B) The failure of the child's parent or alleged parent to seek court orders for custody of the child. [¶] (C) Indigence or other conditions of financial difficulty, including, but not limited to, poverty, the inability to provide or obtain clothing, home or property repair, or childcare."

All statutory references are to the Welfare and Institutions Code.

3

## FACTUAL AND PROCEDURAL BACKGROUND

In late June 2021 the Department received a referral stating Darlene and her newborn child had tested positive for amphetamine. Darlene denied knowingly consuming amphetamine, claiming she had been given what she believed was an over-the-counter pain pill by a friend two days before the birth when she was experiencing contractions. She insisted she had no current or past history with drugs and agreed to drug test if necessary. Darlene acknowledged she had not had any in-person prenatal care, explaining she only had "scattered" telehealth appointments due to COVID-19 protocols.

The Department filed a non-detain petition on behalf of the children on July 26, 2021 pursuant to former section 300, subdivision (b)(1) (failure to protect). At the detention hearing the juvenile court found a prima facie case existed that the children were minors described by section 300 but allowed their continued release to their parents (Mason to Darlene and Rafael; Mariah and Marisol to Darlene and Marco).

On December 1, 2021 the Department filed a section 385 petition to remove Mariah and Marisol from Marco's custody based on Marco's positive tests for marijuana and methamphetamine. The juvenile court issued a removal order on December 6, 2021. At approximately the same time Darlene moved with all three children from the family residence to her parents' home.

The jurisdiction hearing took place over several days in December 2021 and January and February 2022. Marco pleaded no contest to an amended petition alleging, in part, that he had a history of illicit drug use and had a positive test for methamphetamine on November 16, 2021 while the dependency

case was pending. Darlene and two Department social workers testified. The evidence before the court indicated Darlene was in full compliance with services, including participation in alcohol and drug education and relapse prevention classes and negative tests for drugs. The social workers found Darlene's care created no child safety issues.

On February 8, 2022 the court sustained the petition's allegation pursuant to former section 300, subdivision (b)(1), that Marisol was born suffering from a detrimental condition consisting of a positive toxicology screen for amphetamine, which placed the child at risk of serious physical harm. After changing "current" to "recent," the court also sustained the allegation that Darlene was a recent user of amphetamine, which rendered her incapable of providing regular care for Marisol and interfered with her ability to provide appropriate care and supervision for all three children. Finally, in addition to its findings that Marco had a history of illicit drug use and had recently tested positive for methamphetamine, the court sustained the allegation that Darlene had failed to protect the children by allowing Marco to reside in the children's home and have unlimited access to them.

Explaining its ruling on the first count, the court stated it did not find credible Darlene's explanation why she and her newborn child had tested positive for amphetamine. The court also expressed its concern that Darlene went for at least five months after she knew she was pregnant without seeing a doctor, which created a clear health risk to the child.[2]

---

[2] The court acknowledged that Marisol was a healthy baby. "But," the court observed, "the reason people get prenatal care is to make sure everything is all right."

With respect to the second count, the court commended Darlene for the positive steps she had been taking, "even though she's still sort of fighting the factual allegations in this case," referring to her vehement denial of knowingly taking illegal drugs during her pregnancy.

The court declared the children dependents of the court, allowed them to remain in Darlene's care under the supervision of the Department and ordered family maintenance services for Darlene and enhancement services for Marco. The court, again agreeing that Darlene was doing well, scheduled a section 364 review hearing in three months.

In its report for the review hearing the Department stated Darlene had fully cooperated and was in complete compliance with court-ordered programs and services, including an outpatient drug treatment program with aftercare, weekly therapy sessions and negative drug tests. At the review hearing on May 10, 2022 the court, in accord with the Department's recommendations, terminated its jurisdiction and several days later signed juvenile custody orders granting Darlene and Rafael joint physical and legal custody of Mason and Darlene sole physical custody and Darlene and Marco joint legal custody of Mariah and Marisol.

Darlene filed timely notices of appeal from the February 8, 2022 jurisdiction findings and disposition orders and the May 10 and May 13, 2022 orders terminating jurisdiction and juvenile custody orders. We ordered the two appeals consolidated.

In her opening brief, although conceding Marisol had tested positive for amphetamine at birth, Darlene argued there was insufficient evidence to support the juvenile court's finding the child was born with any condition that placed her at risk of

6

serious physical harm.  Similarly, Darlene argued substantial evidence did not support the finding that her recent use of amphetamine—a single, one-time use (whether intentional or inadvertent)—created an ongoing risk to the children's physical health and safety.  Darlene did not challenge the court's additional jurisdiction findings regarding Marco's substance abuse and Darlene's failure to protect the children from Marco.  Nor did she argue the court erred in terminating jurisdiction on May 10, 2022 or entering the May 13, 2022 custody orders.

## DISCUSSION

1.  In re D.P.:  *Moot Dependency Appeals and Our Discretion To Decide Them*

The Supreme Court in *In re D.P.* (2023) 14 Cal.5th 266 explained the mootness doctrine and confirmed it applied to dependency appeals:  "A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  [Citation.]  A case becomes moot when events "'render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.'"  [Citation.]  For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks."  (*Id.* at p. 276.)

In *In re D.P.*, the juvenile court had terminated its jurisdiction without issuing any order that continued to impact the parents.  (*In re D.P.*, *supra*, 14 Cal.5th at p. 277.)  In that context, the Court held, "relief is effective when it 'can have a

7

practical, tangible impact on the parties' conduct or legal status.' [Citation.] It follows that, to show a need for effective relief, the plaintiff must first demonstrate that he or she has suffered from a change in legal status. Although a jurisdictional finding that a parent engaged in abuse or neglect of a child is generally stigmatizing, complaining of 'stigma' alone is insufficient to sustain an appeal. The stigma must be paired with some effect on the plaintiff's legal status that is capable of being redressed by a favorable court decision." (*Ibid.*) The Court gave as examples of nonmoot challenges to jurisdiction findings cases in which a jurisdiction finding affected parental custody rights, curtailed a parent's contact with his or her child or resulted in disposition orders that continued to adversely affect a parent. (*Id.* at pp. 277-278.) The Court expressly held, disapproving contrary case law, that "speculative future harm" is not sufficient to avoid mootness. (*Id.* at p. 278.)[3]

Despite its reaffirmation of the applicability of the mootness doctrine to dependency appeals, the Supreme Court

---

[3] Specifically addressing the appellant father's argument that the challenged jurisdiction finding of neglect could result in his inclusion in California's Child Abuse Central Index (CACI) (Pen. Code, § 11170), which carries several legal consequences, the Supreme Court noted that, when a child protective agency forwards a substantiated report of abuse or neglect to the California Department of Justice for inclusion in CACI, it must provide written notice to the person whose conduct was reported. (*In re D.P.*, *supra*, 14 Cal.5th at p. 279.) Absent evidence in the record that any such report had been submitted or a showing that the type of neglect allegation at issue in the case ("general neglect," rather than "severe neglect") was even reportable, the Court held, "Father's CACI claim is too speculative to survive a mootness challenge." (*Id.* at p. 280.)

8

emphasized that, even when a case is moot, courts may exercise their "inherent discretion" to reach the merits of the dispute. (*In re D.P.*, *supra*, 14 Cal.5th at p. 282.)  That discretion, the Court explained, is generally exercised only when the case presents an issue of broad public interest that is likely to recur, when there may be a recurrence of the controversy between the parties or when a material question remains for the court's determination.  (*Ibid.*)

Nevertheless, because features of dependency proceedings tend to make appeals prone to mootness problems, the Court, without intending to be exhaustive, identified several additional factors for the courts of appeal to evaluate when deciding whether discretionary review of a moot case may be warranted outside of those instances.  (*In re D.P.*, *supra*, 14 Cal.5th at pp. 284-286.)  First, a court may analyze whether the challenged jurisdiction finding could potentially impact the current or future dependency proceedings, for example, by influencing the child protective agency's decision to file a new dependency petition or the juvenile court's determination about further reunification services.  (*Id.* at p. 285.)  Second, a court may take into account the nature of the allegations against the parent:  "The more egregious the findings against the parent, the greater the parent's interest in challenging such findings."  (*Id.* at p. 286.)  Third, a court may consider whether the case became moot due to prompt compliance by the parents with their case plan:  "It would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders."  (*Ibid.*)

9

## 2. *Discretionary Review of This Moot Appeal Is Not Warranted*

Emphasizing that the dependency case was terminated with orders granting Darlene custody of her children and, as a consequence, Darlene is no longer under the supervision of the Department, the Department has requested we dismiss Darlene's appeal as moot. Anticipating that request, in her opening brief Darlene urges us to review the merits of her challenge to the findings relating to her substance abuse (but not to her failure to protect the children from exposure to Marco and his drug use) because she could suffer prejudice in future dependency or family law proceedings from the juvenile court's incorrect findings.

Because we can provide no effective relief to Darlene—that is, relief that "'can have a practical, tangible impact on the parties' conduct or legal status'" (*In re D.P.*, *supra*, 14 Cal.5th at p. 277)—her appeal is moot. And after considering the factors identified in *In re D.P.*, we decline to exercise our discretion to consider a moot appeal.

In an argument devoid of specificity, Darlene contends the juvenile court's incorrect jurisdiction findings and order could prejudice her in future dependency or family law proceedings. She also asserts our failure to review the merits of her appeal will encourage the Department to pursue jurisdiction in similar meritless cases. As discussed, however, the Supreme Court held the type of speculative future harm posited by Darlene is insufficient to avoid mootness. (*In re D.P.*, *supra*, 14 Cal.5th at p. 278.) And unlike *In re J.S.* (2020) 47 Cal.App.5th 1036, upon which Darlene relies and where the court of appeal reached the merits of an arguably moot case to address the broad and largely unresolved question when use of marijuana becomes substance

10

abuse (*id.* at p. 1046), whether Darlene's intentional use of amphetamine during the final days of her pregnancy created a substantial risk of harm to her child does not present an issue of broad public interest. (See *In re Rashad D.* (2021) 63 Cal.App.5th 156, 159 [fact-specific question whether the mother's current circumstances created a substantial risk of serious physical harm to her young son is the type of issue presented to appellate courts multiple times every year]; *In re M.C.* (2011) 199 Cal.App.4th 784, 802 [same].)

No other factor justifies reaching the merits of this moot appeal. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 286 ["no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal"].)[4] In light of the necessary concession by Darlene that Marisol tested positive for amphetamine at birth, the additional findings concerning the impact of Darlene's use of an illicit drug on her ability to care for her children are not particularly egregious. Moreover, in any future dependency or family law proceeding, Darlene will be able to demonstrate the court in this case never detained the children from her, complimented her on her positive efforts to deal with any substance abuse issues and terminated its jurisdiction with orders granting Darlene custody of her children not long after assuming jurisdiction over them. Exercise of our discretionary authority to consider the merits of Darlene's moot appeal is not warranted.

---

[4] Under the facts of this case, there is no reason to believe the decision not to exercise our discretion to review Darlene's moot appeal will disincentivize prompt compliance with juvenile court orders in future cases.

## DISPOSITION

The appeal is dismissed as moot.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.